UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :
MOSTAFA BOURAS,               :   11 Civ. 8708 (WHP)
                              :
            Plaintiff,        :   MEMORANDUM & ORDER
                              :
      -against-               :
                              :
GOOD HOPE MANAGEMENT CORP.,   :
                              :
            Defendant.        :
                              :
------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/24/12

WILLIAM H. PAULEY III, District Judge:

Plaintiff pro se Mostafa Bouras ("Bouras") brings this employment discrimination action against his former employer, Defendant Good Hope Management Corporation ("Good Hope"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. Good Hope moves for summary judgment dismissing Bouras's Complaint. For the following reasons, Good Hope's motion is granted, and Bouras's Complaint is dismissed in its entirety.

BACKGROUND

I.   Factual Background

Good Hope provides management services to owners of commercial and residential properties in the New York City area. (Declaration of Harry Weinberg in Support of Defendant's Motion to Dismiss dated March 20, 2012 ("Weinberg Decl.") ¶ 2, Ex. G: U.S. Equal Employment Opportunity Commission Intake Questionnaire ("EEOC Intake Questionnaire") ¶

3.) Bouras worked as a porter at Good Hope's 1790 Broadway, New York, New York location until his termination on April 7, 2010. (Complaint dated November 29, 2011 ("Compl.") at 2, ¶ B.) At all relevant times, Good Hope was a member of the Realty Advisory Board on Labor Relations, Inc. (the "RAB"), a bargaining group representing property management companies in collective bargaining with unions, including the Service Employees International Union Local 32BJ (the "Union"). (Weinberg Decl. Ex. B: 2008 Collective Bargaining Agreement ("CBA") at 1.) As a Good Hope service employee, Bouras was a member of the Union and subject to a collective bargaining agreement (the "CBA") between the Union and the RAB. (EEOC Intake Questionnaire ¶ 16.)

The CBA contains a mandatory arbitration provision. Specifically, Article VIII of the CBA provides that arbitration is the "sole and exclusive method for the determination" of all disputes, including "all differences arising between the parties as to the interpretation, application or performance of any part of [the CBA], and such other issues as are expressly required to be arbitrated[.]" (CBA at 23-26.) Article XIX of the CBA contains a non-discrimination provision:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act . . . or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Articles VII and VIII) as the sole and exclusive remedy for violations.

(CBA at 91-92.)

In this action, Bouras alleges that on April 5, 2010, Mike Murphy ("Murphy"), the building superintendent at 1790 Broadway, approached him, grabbed garbage that Bouras recently collected, and threw it onto the floor. (Compl. at 4, ¶ 1.) When Murphy ordered Bouras

to remove the garbage again, Bouras refused. (Compl. at 4, ¶ 1.) Murphy then ordered Bouras to go home. (Compl. at 4, ¶ 2.) But before Bouras left, Murphy informed him that, if he did leave, he would be deemed to have quit his employment with Good Hope. (Compl. at 4, ¶ 2.) Murphy then began insulting Bouras. (Compl. at 4, ¶ 2.) Bouras stayed silent and attempted to call the police, but Murphy stopped him and disconnected the telephone. (Compl. at 4, ¶ 1.)

Bouras contends that Murphy discriminated against him because he is an Arab Muslim. (Compl. at 4, ¶ 1.) To support this contention, Bouras avers that Good Hope discharged two Muslim employees before terminating him on April 7, 2010.[1] (Compl. at 4, ¶ 1.)

II. Procedural Background

On October 20, 2010, Bouras filed a complaint with the New York City Commission on Human Rights ("NYCHR") against Good Hope and Murphy, alleging that he was the victim of a hostile work environment and that his termination constituted employment discrimination on the basis of his religion and his Moroccan descent. (Weinberg Decl. Ex. C: City of New York Commission on Human Rights Complaint dated October 20, 2010 ("City Commission Complaint") ¶ 7.)

On November 30, 2010, the NYCHR issued a Notice of Administrative Closure, finding that it lacked jurisdiction over Bouras's complaint because Bouras was a member of the Union and therefore must mediate and arbitrate his discrimination claims under the CBA. (Weinberg Decl. Ex. F). Bouras took no further action with respect to his NYCHR complaint.

---

[1] There is some inconsistency between Bouras's Complaint and his EEOC Intake Questionnaire. Specifically, in his EEOC Intake Questionnaire, Bouras indicated that three Muslim employees were fired by Murphy during Bouras's tenure at Good Hope. (EEOC Intake Questionnaire at ¶ 6.)

Good Hope contends that Bouras then waited until March 27, 2011 to file a charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") based on the same allegations. (EEOC Intake Questionnaire ¶¶ 5-7.) On October 12, 2011, the EEOC issued a Notice of Right to Sue and terminated its processing of his charge. (Compl. Ex. A: EEOC Notice of Right to Sue dated October 12, 2011 ("Right to Sue Notice").) Then Bouras commenced this action.

On March 20, 2012, Good Hope moved to dismiss Bouras's complaint under Federal Rule of Civil Procedure 12(b)(6). By Order dated May 7, 2012, this Court converted Good Hope's motion to dismiss into a motion for summary judgment under Rule 56, notified the parties, and invited additional submissions. See Fed. R. Civ. P. 12(d); see also In re G. & A. Books, Inc., 770 F.2d 288, 294-295 (2d Cir. 1985). On May 14, 2012, Bouras filed an "Affirmation in Opposition to Motion," in which he sought leave to add the Union as a defendant and assert a claim for breach of the duty of fair representation. This Court directed Bouras to serve and file his motion to amend his Complaint by July 2, 2012. Bouras failed to submit the motion as directed.

## DISCUSSION

I. Legal Standard

Summary judgment should be rendered if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with

the moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has made an initial showing that there is no genuine dispute of material fact, the non-moving party cannot rely on the "mere existence of a scintilla of evidence" to defeat summary judgment but must set forth "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original); see also Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Matsushita, 475 U.S. at 586-87). The Court resolves all factual ambiguities and draws all inferences in favor of the non-moving party. See Liberty Lobby, 477 U.S. at 255; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).

The same standards apply to a pro se litigant, but "such a litigant is given special latitude in responding to a summary judgment motion." Pabon v. Wright, No. 99 Civ. 2196 (WHP), 2004 WL 628784, at *4 (S.D.N.Y. Mar. 29, 2004); see also Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment."). Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007).

II. <u>Timeliness</u>

Good Hope contends that Bouras's Title VII claim is untimely. Before a plaintiff may bring a Title VII action in federal court, he must first timely file a charge with the EEOC. See 42 U.S.C. § 2000e-5(e)(1); see also Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 126 (2d Cir. 2010). "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-10 (2002); see also McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 213 (2d Cir. 2006).

"The timeliness requirement of Title VII 'is analogous to a statute of limitations.'" McPherson, 457 F.3d at 214 (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996)). The failure to timely file an EEOC charge precludes a claimant from bringing his Title VII claim in federal court. See Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 133-34 (2d Cir. 2003); see also McPherson, 457 F.3d at 214.

Here, Bouras alleges that he suffered discrimination on April 5, 2010 and that he was terminated on April 7, 2010. To satisfy the Title VII timeliness requirement, Bouras was required to file his EEOC charge within 300 days of the alleged discrimination. Relying on a date-stamped copy of Bouras's EEOC Intake Questionnaire, Good Hope contends that Bouras waited longer than 300 days—until March 27, 2011—to file his charge. At a conference on June 13, 2012, Bouras stated that he filed his EEOC Intake Questionnaire in April of 2011, an even later date. (Transcript of Conference dated June 12, 2012 ("Tr.") at 2-3.) And the record

corroborates Bouras's recollection. In its Right to Sue Notice dated October 12, 2011, the EEOC indicated that the Notice was issued less than 180 days after the filing of the charge. (Compl. Ex. A.) The EEOC's calculation was correct only if Bouras filed his Questionnaire on April 27, 2011 or thereafter.

The record is muddled by the fact that the date stamp on the EEOC Intake Questionnaire is partially illegible. While the date "27" and the year "2011" are clearly visible, the month is obscured. Nevertheless, the date stamp shows a month other than January, the only month in which Bouras could have timely filed his charge. Thus, while the exact date of Bouras's EEOC filing may be in dispute, there is no genuine dispute regarding its timeliness. Whether he filed the Questionnaire in March or April of 2011, he clearly filed it more than 300 days after the alleged discrimination. Given the evidence on the record, no reasonable jury could determine otherwise. See Liberty Lobby, 477 U.S. at 248. Accordingly, Bouras's claim is untimely, and Good Hope's motion for summary judgment dismissing the Complaint is granted.

III.  Duty to Arbitrate

Even if Bouras's Title VII claim were deemed timely, it would still fail because Bouras failed to arbitrate it. In 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 274 (2009), the Supreme Court held that "a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law." And "[i]t is clear that the Court's holding [in Pyett] applies with equal force to Title VII claims." Borrero v. Ruppert Hous. Co., No 08 Civ. 5869 (HB), 2009 WL 1748060, at *2 (S.D.N.Y. June 19, 2009). Indeed, the Court in Pyett observed that "nothing in the text of Title VII . . . precludes contractual arbitration[.]" 556 U.S. at 267 n.9.

The CBA at issue here, a successor to the CBA discussed in Pyett, expressly provides that employee discrimination claims under Title VII, as well as under state and local anti-discrimination laws, "shall be subject to the grievance and arbitration procedure . . . as the sole and exclusive remedy for violation." (CBA at 91-92.) This language clearly and unmistakably requires arbitration of Bouras's Title VII claim.

In his opposition to Good Hope's motion, Bouras seems to argue that Pyett should not apply because the Union refused to represent him in arbitration proceedings. But courts in this district have considered and rejected this argument. Pyett "does not allow courts to disregard arbitration clauses whenever a plaintiff feels that he hasn't been fairly treated by the union of which he is a member." Gildea v. BLDG Mgmt., No. 10 Civ. 3347 (DAB), 2011 WL 4343464, at *3 (S.D.N.Y. Aug. 16, 2011). Rather, courts decline to enforce arbitration clauses only when such clauses prospectively waive a plaintiff's statutory rights or prevent him from effectively vindicating them in arbitration. See Gildea, 2011 WL 4343464, at *3.

Bouras does not identify any specific provision of the CBA that would prevent him from vindicating his statutory rights in an arbitral forum. While the CBA mandates the arbitration of employment discrimination claims, it does not prevent or impede Bouras from arbitrating his claim in the absence of Union participation. Nor does Bouras proffer any evidence suggesting that the Union prevented him from arbitrating his claim on his own behalf. Cf. Morris v. Temco Serv. Indus., Inc., No. 09 Civ. 6194 (WHP), 2010 WL 3291810, at *5 (S.D.N.Y. Aug. 12, 2010) (refusing to compel arbitration where union prevented plaintiff from arbitrating).

This reading of the CBA is consistent with the Union's and the RAB's apparent understanding of the agreement. Following Pyett, the RAB and the Union entered into a supplemental agreement establishing procedures that employees must follow to arbitrate claims that the Union declines to arbitrate on their behalf. (Declaration of Harry Weinberg in Support of Defendant's Motion for Summary Judgment dated May 31, 2012 Ex. A: Agreement and Protocol dated Feb. 17, 2010.); see also Duraku v. Tishman Speyer Props., Inc., 714 F. Supp. 2d 470, 472-73 (S.D.N.Y. 2010) (describing the procedures established by the supplemental agreement between the Union and the RAB). Therefore, regardless of the Union's participation, Bouras must arbitrate his Title VII claim. Because he did not, Defendant's motion for summary judgment dismissing Bouras's Complaint is granted.

IV.  Leave to Amend

Bouras failed to submit a motion to amend his Complaint to add a duty of fair representation claim against the Union. But even if Bouras had filed his motion, his proposed amendment would be futile.

Courts grant leave to amend a complaint "freely" when "justice so requires." Fed. R. Civ. P. 15(a)(2). However, "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200-01 (2d Cir. 2007). An amendment is futile if the proposed amended complaint would fail to state a claim on which relief could be granted. Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

Here, any amendment would be futile because Bouras's claims against the Union are time-barred. The statute of limitations for a duty of fair representation claim against a labor

union is six months from the date the plaintiff knew or should have known of the breach. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 172 (1983). At the April 12, 2012 conference, Bouras stated that he learned of the Union's decision not to arbitrate on his behalf at some point in 2010. (Tr. at 4.) Thus, any fair representation claim is barred by the six-month limitations period. See DelCostello, 462 U.S. at 172. Accordingly, the proposed amendment would be futile, and Bouras's application to amend his Complaint is denied.

## CONCLUSION

For the foregoing reasons, Good Hope's motion for summary judgment is granted, and the Complaint is dismissed with prejudice. This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to terminate all pending motions and mark this case closed.

Dated: July 24, 2012
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copies to:*

Mostafa Bouras
25 75 49th Street
Astoria, NY 11103
*Plaintiff Pro Se*

Harry M. Weinberg, Esq.
Law Offices of Harry Weinberg
292 Madison Avenue
New York, NY 10017
*Counsel for Defendant*